Tilghman J.
The policy of insurance in this case has the usual clause, “If the vessel,after regular survey, should be con- “ demned, for being unsound or rotten, the assurers shall not “be bound to pay their subscription.” There was a regular survey, and the surveyors reported as follows: — “ Her stern, “ apron, bends, and the most part of her timbers are decayed, “ as also a considerable part of her planks, from which cir- “ cumstances, in. our opinion, to make her a good, strong, “ staunch, and sea-worthy vessel, would cost a great deal “ more than she would be worth when finished, and we are “ therefore of opinion, that it will be more for the benefit of “ the concerned to sell her in her present state.” .
The question is, whether, upon this condemnation, the underwriters are discharged. The clause in the policy may sometimes bear hard upon the assured, because it precludes them from shewing, that the vessel was sea-worthy at the commencement of the voyage. It is, however, the contract of the parties, and therefore obligatory upon both. The intention of it was to prevent disputes. It is exceedingly diffi» cult to prove what was the condition of a vessel, as'to soundness, when the voyage commenced. Both parties therefore agreed, that if on a survey there should be a condemnation for unsoundness, it should be taken for conclusive evidence, that the vessel was not sea-worthy- at the commencement of the .voyage. The construction of this part of the policy has been discussed in this Court, in the cases of Garrigues v. Coxe, and Armroyd v. The Union Insurance Company, And I think it may be considered as settled, from the opinion of the Court in those cases, that where the condemnation is for unsoundness from decay, and for no other cause, the underwriter is discharged, but he remains chargeable where the condemnation is in part for decay and in part for damage occasioned by perils of the sea. Now the condemnation in *297 the present instance is founded solely on decay. No other. cause is mentioned. To be sure, it is not said in express terms, that the vessel was unsound or rotten, but it is said, that her principal parts, enumerating them, were decayed, ( which is the same as rotten,) and no other cause is assigned for her being not sea-worthy. If this be not a condemnation within the meaning of the policy, the clause will be nugatory, because upon a survey the particular parts which are found in a decayed state are always mentioned, and indeed it would not be proper to say in general that the vessel was rotten. Then, when the particular parts found to be decayed are first mentioned, and afterwards the general conclusion drawn, that the vessel is not sea-worthy, I know not how we can understand it otherwise than that rottenness is the cause of condemnation. I'am, therefore, of opinion, that the plaintiff ought not to recover.
Yeates J.
The clause in the policy on which the point reserved rests, should be construed fairly according to the true intention of the parties. It would be highly unreasonable to expect, that the return of the surveyors should minutely conform to the expressions used in the policy, which was not open to their inspection, if in fact and substance it agrees therewith. No objection is taken to the form of procedure under the warrant of survey issued by the deputy naval officer at Kingston, and it is admitted that the schooner was condemned under it. The persons appointed were two masters of vessels and two shipwrights, who must be supposed to be the most competent judges of the question of seaworthiness. They return upon oath, that upon examination of the schooner they find u her stern, apron, bends, and “ the most part of her timbers, are decayed, as also a consider- “ ble part of her plank f from which circumstances they express their opinion, “ that it xvould be eligible to sell her in her “present state.” A sale took place accordingly. The survey exhibits a particular statement of facts equivalent to general unsoundness or rottenness in the hull of the vessel. A voyage of twenty-six days could not produce such effects, although attended by strong gales of wind. Stormy weather may cause partial fracture, or may dislodge certain timbers or planks, but it cannot cause general decay in the course of three or four weeks. The decay of wood is gradual in its *298 nature, imperceptible in its progress, and necessarily involves unsoundness or rottenness. The word decay, in its appropriate sense, shews the true source of unsoundness or rottenness in the particular instance, and I am of opinion, that this survey brings the schooner within the true meaning of the clause in the policy, and that the assured, by his own agreement, has discharged the insurers from all responsibility. Every fair mercantile contract should be performed with the utmost good faith. A new trial must be awarded.
Brackenridge J. was absent.
New trial awarded.